KEVIN LANG, A MINOR, BY JEROME LANG, HIS FATHER AND NEXT FRIEND, APPELLANT, v. GLENN KERR, APPELLEE.
141 N. W. 2d 759

Filed April 8, 1966.   No. 36123.

Asa A. Christensen and Kier, Cobb & Luedtke, for appellant.

Healey & Healey, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and KOKJER, District Judge.

KOKJER, District Judge.

This action was brought by Jerome Lang as father and next friend for Kevin Lang, a minor. Defendant was Glenn Kerr, driver of the car in which Kevin was riding on August 19, 1963. An accident occurred when defendant was attempting to pass a truck which turned left in front of him to enter a county road, No. 20. The incident took place on U. S. Highway No. 75 in Minnesota about 2 miles south of the town of Kent.

Plaintiff's motion for a directed verdict on the issue of liability was denied. The case was submitted to the jury. A verdict was rendered for the defendant. Plaintiff's motion for a new trial having been denied, he appealed.

Plaintiff has assigned that the court erred: (1) In overruling his motion for a new trial; (2) in failing to direct a verdict for plaintiff on the issue of damages; (3) in admitting in evidence, over objection, testimony of the mother of plaintiff, who was a passenger in the car, that she did not feel the car was going too fast; (4) in allowing the defendant on cross-examination to give a long and elaborate explanation of his answer pertaining to knowledge of a danger; (5) in refusing to allow the plaintiff to read into evidence from the deposition of defendant his testimony that he recognized that a slow-moving vehicle on an open highway, that is approaching an intersecting road, is usually going to turn; and (6) in giving instruction No. 1 wherein, in summarizing the pleadings, he set out that plaintiff alleged the defendant's acts were "the" proximate cause instead of "a" proximate cause of said collision.

In addition to the defendant driver, there were in the front seat of the car Charlotte Faye Lang, an aunt of the plaintiff, who had been dating defendant, and Joette Lang, her niece. In the back seat were Ramona Lang and her 8-year-old son, Kevin, the plaintiff.

Defendant was taking the others from Cleveland, North Dakota, to Wahpeton, North Dakota, where

they were to meet another friend with whom they were going to ride back to Lincoln, Nebraska. It was a clear day. The highway was dry and level. The accident happened at about 12:40 o'clock p. m. U. S. Highway No. 75 at the accident scene angles slightly from the northwest to the southeast. County road No. 20 joins the highway from the east but does not cross it. The angle between U. S. Highway No. 75 and the county road to the east, formed by the south side of the county road and the east side of U. S. Highway No. 75, is slightly more than a right angle. As defendant, who was driving from the north toward the south, approached the truck which was proceeding south ahead of him, he was driving about 60 miles an hour. The truck was going 15 or 20 miles an hour just before the accident. Defendant pulled into the left lane, looked to the south for approaching traffic, and, seeing that no car was coming from the south, proceeded to pass the truck at about the same speed he had been driving. The truck turned left to go onto the county road. Defendant put on his brakes, laying down a faint skid mark 60 feet, 6 inches long and heavy skid marks 89 feet, 9 inches long. His car was slowed down by the brakes but he estimated it was going 40 to 50 miles per hour—probably closer to 50—when he hit the rear end of the truck. Defendant testified he was looking at the back of the truck and saw no signal nor lights of any kind and no arm signal. On cross-examination, Charlotte Lang, one of plaintiff's witnesses, testified as follows: "Q- Miss Lang, did you see this truck at all? A- Yes. Q- Did you see it—You must have seen it then as Mr. Kerr was approaching the truck in his automobile. Is that correct? A- Well, I think I saw it. I'm not sure. I couldn't really say, for sure. I just remember somebody making some comment to make me look up and realized that we were—that we were going to hit. Q- You saw the truck then? A- I saw the truck then. Q- Was that truck signaling for a turn?

A- I don't remember seeing it signal at all. Q- Isn't it true, Charlotte, that the first thing you said after this accident was, 'He didn't even signal'? A- That's right."

Ramona Lang, a witness for plaintiff, testified in part as follows: "Q- What was your first notice that something was happening? A- I still had my head down. * * * And some startling statement from the front seat made me realize that something unusual was taking place. So, I immediately looked up * * *. Q- What did you see then? A- I saw a truck just beginning to cross over into the left lane. Q- When you say 'cross over,' * * * you noticed it cross the white line down the middle of the highway? A- Yes. A portion of the truck had already entered the front, or, the left lane of the highway. Q- What was taking place with regard to your vehicle at this time? A- We were completely over in the left lane, the passing lane." On cross-examination she again testified that she was looking down until something was said in the front seat that startled her—something to do with the truck turning. She was then asked: "Q- Where was the truck when you saw it? A- The truck was beginning a turn, at an angle; just starting over into the left lane."

The substance of this witness' testimony as to signals was to the effect that, upon hearing the startling statement, she sat up, with her arms resting on the back of the front seat, and could see the truck well; and that she did not see any lights, blinking lights, or any lights at all, or signals of any kind from the truck.

The truck driver testified that when he was ½ mile north of the intersection he was traveling 40 to 45 miles per hour. When he reached a point 400 feet north of the intersection he looked in his rear-view mirror and saw a car over ½ mile behind him, he turned his left blinker light on and started slowing down for a left-hand turn, he heard squealing brakes, and his truck was hit when three-fourths of it was on the county road, headed a little southeast. The patrol officer who inves-

tigated the accident testified the turn signals were in working order except for one on the left rear which was broken in the accident, and that gouge marks and skid marks from defendant's car were all in the east lane of the highway.

For the purpose of decision on plaintiff's motion for a directed verdict on the issue of liability, the district court had to treat as true all material and relevant evidence supporting the position of the defendant and to resolve every controverted fact in his favor, together with every inference that could be reasonably deduced from the evidence. Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518; Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569.

The court made no error in overruling the motion for a directed verdict.

The jury evidently came to the conclusion that the accident was caused by the truck driver who made no signal, but turned to the left in front of defendant as he was in the act of passing. A verdict of a jury in a law action based upon conflicting evidence will not be disturbed on appeal unless clearly wrong. Burry v. Interstate Transit Lines, 136 Neb. 695, 287 N. W. 66.

Error is assigned to the district court in giving instruction No. 1 wherein, in summarizing the pleadings, it was set out that plaintiff alleged defendant's acts were "the" proximate cause instead of "a" proximate cause of the accident. The last paragraph of this instruction reads as follows: "The foregoing is an abstract or synopsis of the claims and allegations made by the parties to this action, and this summary is made for your convenience and it is, of course, not to be taken as a statement of facts, matters or acts proved by any of the parties except as to admissions specifically made and to which the Court has called your attention." In instruction No. 2 the jury was told that the burden is upon the plaintiff to prove that the alleged negligence of the defendant was "a" proximate cause of the collision. Instruction No. 7 outlined the rule as to liability when the negligence

of two persons combines to produce a single injury, to the effect that if both the defendant and the driver of the second vehicle were negligent, and their combined negligence was "a" proximate cause of plaintiff's injuries, recovery could be had from defendant. The last part of the instruction reads as follows: "* * * but if you find that the defendant, Glenn Kerr, was not negligent or that the sole proximate cause of plaintiff's injuries was the negligence of a driver of a second vehicle, then your verdict would be for the defendant."

Instruction No. 9, which had to do with the measure of damages, begins with this statement: "If you find from a preponderance of the evidence in this case that the negligence of defendant was 'a' proximate cause of such injuries and damages as you find were sustained by plaintiff, you will award plaintiff as damages such an amount as will fairly and reasonably compensate him for any damages which you find from the evidence under these Instructions that he has sustained as a proximate result of the accident."

The true meaning of a set of instructions will be determined from a consideration of all that is said in them and not from picking out and emphasizing one errant word. Myers v. Willmeroth, 151 Neb. 712, 39 N. W. 2d 423; Fridley v. Brush, 161 Neb. 318, 73 N. W. 2d 376.

After Ramona Lang had testified that she had been riding in defendant's automobile for a considerable time, that she drives an automobile, and that she is able usually to feel if the automobile she is in is going too fast, she was asked on cross-examination: "Q- And had you felt the automobile you were in was going too fast on the particular day of this accident?" Over objection that it called for a conclusion, she answered: "I had not felt that we were going at a very fast rate of speed, no." Such testimony on cross-examination was considered in Buie v. Beamsley, 171 Neb. 181, 105 N. W. 2d 738. In the present case there was other evidence fixing

speed. This witness' testimony was to the effect that she did not consider, during the drive on that day, the speed was too fast. This did not add to the evidence on speed but it could not have confused the jury in any way. She was plaintiff's witness and if it was considered important to him to have the witness express herself in miles per hour he could have questioned her further.

Error is also assigned because of the refusal of the district court to permit plaintiff to read the testimony of the defendant from a deposition, to the effect that he recognized that a slow-moving vehicle, in an open highway, that is approaching an intersection, is usually going to turn. Plaintiff was permitted to bring out this testimony from the witness on cross-examination and if there was any error in the earlier ruling it was cured thereby. The explanation made by the witness of this answer was no more than he would have been permitted to do had his testimony been read from the deposition. This assignment of error is not sustained.

The only other complaint made by plaintiff had to do with the court's failure to include, in summarizing plaintiff's petition, one specification of alleged negligence concerning an occurrence some 15 miles or more north of the accident scene. Defendant had started to pass another vehicle but, seeing a car approaching from the opposite direction, braked quickly and was able to get back in his right lane, back of the preceding vehicle, without mishap. Plaintiff was permitted, over objection, to bring this out before the jury, together with the fact that defendant had slept only about 4 hours the night before and that witness Charlotte Lang, who had slept no longer the night before, asked him if he wanted her to drive. The incident was remote. There was no evidence to connect it in any way as a cause of the accident. The court was liberal in permitting the testimony. The court was entirely correct in leaving it out of instruction No. 1.

The case was properly submitted to the jury and its verdict, based upon conflicting evidence, will not be disturbed. The judgment is affirmed.

AFFIRMED.