LINCOLN GRAIN, INC., A KANSAS CORPORATION, APPELLANT, v. COOPERS & LYBRAND, A PARTNERSHIP, APPELLEE.

345 N.W.2d 300

Filed February 10, 1984. No. 83-094.

Karen B. Flowers and David M. Geier of Bauer, Galter & Geier, for appellant.

Maureen E. McGrath of Kutak Rock & Huie, and Joseph A. Clark III, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

In this appeal plaintiff-appellant, Lincoln Grain, Inc., a grain dealer, challenges the judgment entered, pursuant to a jury's verdict, dismissing its action against defendant-appellee, Coopers & Lybrand, public accountants, which alleges that Lincoln Grain was damaged by Coopers & Lybrand's negligent failure to perform its contractual duties in accordance with generally accepted auditing standards. We reverse and remand for a new trial.

This marks the second appearance of these parties before this court in matters related to the instant

case. In *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983), hereinafter referred to as *Lincoln Grain I*, we held that any causes of action Lincoln Grain might have had for the alleged malpractice of Coopers & Lybrand in conducting audits for the 1973 and 1974 fiscal periods were barred by the 2-year period of limitations prescribed in Neb. Rev. Stat. § 25-222 (Reissue 1979).

In this action Lincoln Grain pleads that it engaged Coopers & Lybrand to conduct an audit for the fiscal year ending June 30, 1975, and that Coopers & Lybrand failed to conduct that audit in accordance with generally accepted auditing standards. In its answer Coopers & Lybrand asserts a variety of defenses, including claims that Lincoln Grain assumed the risk of employee fraud and was contributorily negligent. In addition, Coopers & Lybrand sued the directors and officers of Lincoln Grain as third-party defendants, claiming that if Coopers & Lybrand were found liable to Lincoln Grain, the third-party defendants would become liable to Coopers & Lybrand for their failure to properly discharge their duties to Lincoln Grain. No issue as to the propriety of that third-party action is presented to us.

The record establishes that Lincoln Grain, Inc., engaged Coopers & Lybrand, as it had in past years, to perform an audit of Lincoln Grain's financial statements for the aforesaid fiscal period and render an opinion thereon. As part of that audit, Coopers & Lybrand investigated the accuracy of the valuation placed upon the inventory of Lincoln Grain's Iowa division. The Iowa division was involved in the buying and selling of grain and other agricultural commodities, but had no storage or shipping facilities. Its inventory consisted only of contracts to sell or purchase commodities. At the end of the fiscal year a value was placed upon the inventory by reference to the market price for the particular commodity as of that day.

On June 30, 1975, Lincoln Grain valued the inven-

tory of its Iowa division at nearly $2 million, and included this valuation in compiling its financial statements. On September 12, 1975, Coopers & Lybrand issued a report which stated: "In our opinion, the aforementioned financial statements present fairly the financial position of Lincoln Grain, Inc. at June 30, 1975 and the results of its operations and changes in its financial position for the year then ended, in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceding year."

The generally accepted auditing standards in evidence include the following with respect to field-work: "2. There is to be a proper study and evaluation of the existing internal control as a basis for reliance thereon and for the determination of the resultant extent of the tests to which auditing procedures are to be restricted. 3. Sufficient competent evidential matter is to be obtained through inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the financial statements under examination."

In November of 1975 the treasurer of Lincoln Grain became concerned with the large cash needs of the Iowa division and began to investigate the reasons. In early 1976 the manager of the Iowa division, who was also a vice president of Lincoln Grain, admitted to falsifying the inventory valuations. Later investigation determined that instead of having a nearly $2 million inventory as of June 30, 1975, the inventory of the Iowa division had only a $143,000 value. The Iowa division closed for new business in February of 1976.

Lincoln Grain contends that if the audit had been conducted in accordance with generally accepted auditing standards, the fraudulent activities of its employee would have been discovered at an earlier time, and that it was damaged by the delayed discovery. Specifically, Lincoln Grain complains, among other things, that Coopers & Lybrand failed

to discover that the actual commodity contract prices on some of the contracts checked by Coopers & Lybrand did not correspond with those listed on the inventory; that nearly half the freight rates listed on the inventory were wrong; and that the figure used to value the net position was not consistent with available external market information.

Lincoln Grain assigns as error the actions of the trial court in (1) refusing to receive into evidence Lincoln Grain's exhibit 10; (2) submitting the assumption of risk defense to the jury; (3) submitting the contributory negligence defense to the jury; and (4) charging the jury in the language of instruction Nos. 9, 10, and 11.

It seems appropriate to begin our analysis with a review of the nature of the action before us. Although the dividing line between breaches of contracts and torts is often dim and uncertain, it has been said that the character of an action as one in tort or on contract is determined by the nature of the grievance, not by the form of the pleadings, with consideration being given to the facts which constitute the cause of action. *Driekosen v. Black, Sivalls & Bryson*, 158 Neb. 531, 64 N.W.2d 88 (1954); 1 Am. Jur. 2d *Actions* § 8 (1962). While in *Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 88 N.W.2d 648 (1958), we said that where a petition contains a cause of action for breach of contract, additional averments appropriate to a tort action will not change the action from contract to tort, we have also said that one may sue in tort when there has been negligence in the performance of a contract. *Driekosen v. Black, Sivalls & Bryson, supra.* The injury in such a case results not from a breach of the contract but from negligence in the performance of it, for accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done. A negligent failure to observe any of these conditions is a tort as well as a breach of contract. *Driekosen v.*

*Black, Sivalls & Bryson, supra*; 74 Am. Jur. 2d *Torts* § 24 (1974). Moreover, to the extent there is a choice, 74 Am. Jur. 2d, *supra*, the parties elected to try this case as if it were one in tort. Ordinarily, as we do in this case, we will dispose of a case on appeal on the theory on which it was presented in the lower court. *O'Keefe Elevator v. Second Ave. Properties*, *ante* p. 170, 343 N.W.2d 54 (1984); *Kearney Clinic Bldg. Corp. v. Weaver*, 211 Neb. 499, 319 N.W.2d 95 (1982).

The appropriate standard of review for an assignment of error directed at the exclusion of evidence is one of abuse of discretion, as the admission or exclusion of evidence is a matter left largely to the sound discretion of the trial court, which must determine the relevancy and possible prejudicial effect of the proffered evidence. *State v. Coca*, *ante* p. 76, 341 N.W.2d 606 (1983); *State v. Jones*, 213 Neb. 1, 328 N.W.2d 166 (1982).

Exhibit 10, the subject of Lincoln Grain's first assignment of error, is Coopers & Lybrand's report to Lincoln Grain's management concerning the audit for the fiscal year ending June 30, 1974. It was submitted to Lincoln Grain on December 24, 1974, together with a cover letter in which Coopers & Lybrand states: "Our examinations disclosed no matters related to the systems of internal control and accounting procedures of Lincoln Grain, Inc., Lincoln Industries, Inc. and The 25 Corporation, Inc. which we felt were of such significance to warrant inclusion herein."

In its report concerning the 1975 audit, dated January 27, 1976, Coopers & Lybrand details deficiencies in the internal controls of Lincoln Grain, the same controls which existed at the time of the 1974 report.

Lincoln Grain contends that the 1974 report is relevant to the issue of its exercising due care and the issue of proximate cause. More specifically, Lincoln Grain contends that since Coopers & Lybrand, as a defensive matter, alleged and offered proof that

Lincoln Grain was negligent in the type of internal controls implemented to protect the integrity of its records, Lincoln Grain should be allowed to introduce the 1974 statement of Coopers & Lybrand that the internal controls in use in 1974, and continued in 1975, presented no problem. Its argument continues to the conclusion that reliance on the statements of its outside auditor is highly relevant to Coopers & Lybrand's contention that Lincoln Grain was contributorily negligent.

It appears the trial court excluded exhibit 10 on the ground that although it might have relevance, that relevance was overwhelmed by the prejudice it inflicted on Coopers & Lybrand. Although, as discussed later in this opinion, the concept of contributory negligence has a very limited role in this case, the proffered evidence is certainly relevant to the determination of the proximate cause of Lincoln Grain's damages. The fact that *Lincoln Grain I* held any cause of action for the claimed mispreparation of the 1974 audit report to be time barred does not mean that the report is not relevant to the issues presented by this suit on the 1975 audit. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. Neb. Rev. Stat. § 27-403 (Reissue 1979); *In re Estate of Camin*, 212 Neb. 490, 323 N.W.2d 827 (1982).

Most, if not all, items which one party to an action offers in evidence are calculated to be prejudicial to the opposing party; therefore, it is only "unfair prejudice" with which we are concerned. In the context of § 27-403 such prejudice means a tendency to suggest a decision on an improper basis. See, *United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980); Fed. R. Evid. 403 advisory committee note discussing the federal rule, after which § 27-403 is patterned. It is not unfairly prejudicial under the circumstances of this case to make the trier of fact

aware that the very internal control systems which Coopers & Lybrand now condemns were previously found by it not to be worthy of adverse comment. The trial court abused its discretion by refusing to receive exhibit 10 into evidence.

Lincoln Grain's first assignment of error is therefore sustained. For this reason and the reasons discussed hereinafter, the case must be remanded for a new trial. Because the issues presented by the remaining assignments of error are likely to reoccur upon retrial, we review them as well.

As to the second assignment of error, the trial court instructed the jury, in essence, that if Lincoln Grain knew and appreciated the danger of employee fraud, voluntarily or deliberately exposed itself to that danger, and was proximately damaged as a result, then and in that event the verdict must be for Coopers & Lybrand.

The assumption of risk doctrine is predicated upon an implied consent to be treated negligently, and generally relates to one voluntarily undertaking a known risk even though he is otherwise in the exercise of reasonable care. *Schwab v. Allou Corp.*, 177 Neb. 342, 128 N.W.2d 835 (1964); *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982). Restatement (Second) of Torts § 496 A at 560 (1965) states the general principle as follows: ''A plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct *of the defendant* cannot recover for such harm.'' (Emphasis supplied.) Lincoln Grain's employee is not the defendant. The assumption of risk instruction is clearly inapplicable to an action charging that an accountant negligently breached an agreement to render professional accounting services. The defendant in this case is an independent, professional contractor engaged to conduct an independent audit; certainly it cannot be said that one who engages such an accountant assumes the risk that the accountant will fail to adhere

to proper professional standards in performing the contractual duties of the engagement.

The third assignment of error presents a more complicated problem. In substance, the trial court instructed the jury that if it found Coopers & Lybrand to have been negligent, then it must consider whether Lincoln Grain had been contributorily negligent—that is, whether Lincoln Grain had failed to properly monitor and review the Iowa division's financial data; failed to properly supervise that division; failed to take notice of information in its possession which should have put it on notice of the falsifications of the Iowa division's manager; and whether Lincoln Grain furnished to Coopers & Lybrand incorrect data relating to the Iowa division. If so, and if such negligence on the part of Lincoln Grain was the proximate or a proximately contributing cause of Lincoln Grain's damage, then the jury should compare the negligence of both Lincoln Grain and Coopers & Lybrand and otherwise proceed in accordance with the comparative negligence instructions.

Although the role of the contributory negligence defense in an action against an accountant is one of first impression in this jurisdiction, it has been faced by other jurisdictions and has been the subject of comment by writers. *Craig v. Anyon*, 212 A.D. 55, 208 N.Y.S. 259 (1925), *aff'd* 242 N.Y. 569, 152 N.E. 431 (1926); *National Surety Corp. v. Lybrand*, 256 A.D. 226, 9 N.Y.S.2d 554 (1939); *Shapiro v. Glekel*, 380 F. Supp. 1053 (S.D.N.Y. 1974); Annot., 92 A.L.R.3d 396 (1979); Hawkins, *Professional Negligence Liability of Public Accountants*, 12 Vand. L. Rev. 797 (1959); Menzel, *The Defense of Contributory Negligence in Accountant's Malpractice Actions*, 12 Seton Hall 292 (1983).

We agree with the view of the *National Surety* and *Shapiro* courts that accountants are not to be rendered immune from the consequences of their own negligence merely because those who employ them

may have conducted their own business negligently. Allowing such a defense would render illusory the notion that an accountant is liable for the negligent performance of his duties. We hereby adopt the rule enunciated by the *National Surety* and *Shapiro* courts, and articulated by Hawkins and Menzel, that the contributory negligence of the client is a defense only where it has contributed to the accountant's failure to perform the contract and to report the truth. The evidence here is such that whether Lincoln Grain was contributorily negligent in its dealings with the auditors and whether such negligence contributed to Coopers & Lybrand's failure to perform its contract in accordance with generally accepted auditing standards are questions of fact for the jury under an instruction in accordance with the foregoing rule.

Lincoln Grain's fourth, and last, assignment of error questions three additional instructions. The first of these is instruction No. 9, which reads: "Under the engagement agreement between the parties, and under Generally Accepted Auditing Standards, the defendant did not undertake to do a detailed fraud audit, or to disclose fraud or defalcations. The defendant must be aware of the possiblity [sic] that fraud may exist in the plaintiff company. However, an ordinary audit cannot be relied upon to assure that fraud or deliberate misrepresentations by plaintiff's management will be discovered. The defendant is not an insuror [sic] or guarantor if it turns out that fruad [sic] occurred and the defendant did not discover it. The defendant does have a responsibility for failing to detect fraud when such failure *clearly* results from the defendant's failure to comply with Generally Accepted Auditing Standards. The subsequent discovery of fraud does not of itself mean that the defendant's examination was negligently done." (Emphasis supplied.)

Lincoln Grain argues that the use of the word

"clearly" serves to confuse the jury with respect to its burden of proof.

The court instructed the jury elsewhere that Lincoln Grain was to show by "a preponderance of the evidence" that Coopers & Lybrand was negligent by not conforming to the generally accepted auditing standards, and correctly defined the meaning of the phrase "preponderance of the evidence." We have said that the true meaning of a set of instructions is to be determined from a consideration of all that is said in them and not from picking out and emphasizing one errant word. *Lang v. Kerr*, 180 Neb. 106, 141 N.W.2d 759 (1966). See, also, *Landmesser v. Ahlberg*, 184 Neb. 182, 166 N.W.2d 124 (1969). Although an instruction should be couched in neutral and nonargumentative language, the word "clearly" adds nothing of legal significance to the instruction. We are of the opinion that when the instructions in this case are read as a whole, the inclusion of the offending word does not render instruction No. 9 prejudicially erroneous.

Lincoln Grain also contends that this instruction misstates its theory of the case. Lincoln Grain argues it is not claiming that Coopers & Lybrand had the duty to detect fraud, but that Coopers & Lybrand's failure to perform its audit properly resulted in the failure of Lincoln Grain to discover the falsifications of its Iowa division manager as early as it otherwise would have. That may be the case, but the instruction nonetheless correctly defines the duty undertaken by Coopers & Lybrand and is therefore proper.

In instruction No. 10 the trial court undertook to define the duties corporate directors owe their corporation. No authority is cited that such duties are owed by corporate directors to the accountants the corporation engages. The instruction has no relevance to the cause of action between Lincoln Grain and Coopers & Lybrand. Whether the instruction has relevance to the third-party petition between

Coopers & Lybrand and Lincoln Grain's officers and directors, whether it correctly states the law with respect thereto, and whether said third-party action is viable are matters not before us, as they have neither been briefed nor argued, and are therefore not considered.

The last instruction of which Lincoln Grain complains is No. 11, which states: "In conducting an opinion audit, an auditor is required to obtain certain written representations from management, to afford the auditor a reasonable basis for its opinion on the financial statements. Therefore, management owes a duty to the auditor of exercising reasonable care in preparing and giving these written representations." This instruction is not taken from the general auditing standards in evidence. Lincoln Grain argues that this instruction is much like the trial court's contributory negligence instruction, in that if it is a proper statement of the law, accountants would never be liable for their negligence.

Coopers & Lybrand contends, on the other hand, that the instruction is supported by Restatement (Second) of Torts § 552(1) (1977). That section is concerned with negligent misrepresentation. "(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information *for the guidance of others in their business transactions*, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis supplied.) *Id*. at 126-27. This section of the Restatement is inapplicable to the facts presented by this case. The information in question was not supplied to Coopers & Lybrand for its guidance in its business transactions with others, but for its use in auditing and verifying Lincoln Grain's own financial statements.

Coopers & Lybrand also contends that Lincoln

Grain's witness stated it was management's responsibility to prepare inventory certificates. Nowhere, however, is there support for the contention that Lincoln Grain owes a duty to Coopers & Lybrand in its preparation of these certificates. In point of fact, one of Coopers & Lybrand's duties was to verify the valuation placed upon the inventory by Lincoln Grain. As such, the instruction is patently erroneous.

There remains for consideration Coopers & Lybrand's argument that even if all of Lincoln Grain's assignments of error are valid, that circumstance does not justify reversal of the judgment of dismissal, since Coopers & Lybrand's motions for a directed verdict should have been granted in any event. It is true that instructing a jury erroneously is not prejudicial error when such instructions result in a verdict for the party who was entitled to a directed verdict. *McClellen v. Dobberstein*, 189 Neb. 669, 204 N.W.2d 559 (1973). We have already determined that Coopers & Lybrand was not entitled to a directed verdict, in that the evidence presents fact questions for the jury on the contributory negligence issue. Nonetheless, we comment briefly on Coopers & Lybrand's remaining two contentions in this regard.

Its first remaining argument is that there was an intervening and superseding cause for Lincoln Grain's losses, which cuts off Coopers & Lybrand's liability. The doctrine that an intervening act cuts off the liability of a tort-feasor comes into play only when the intervening cause is not foreseeable. *Shelton v. Board of Regents*, 211 Neb. 820, 320 N.W.2d 748 (1982); *Libbey-Owens Ford Glass Co. v. L & M Paper Co.*, 189 Neb. 792, 205 N.W.2d 523 (1973). Thus, the doctrine does not apply here, for it is foreseeable that the negligent failure to detect falsifications will likely result in continued falsifications.

Coopers & Lybrand's last ground in support of its

directed verdict argument is that Lincoln Grain did not show it solely relied on the audit in keeping its Iowa division open. That Lincoln Grain must show such sole reliance is not supported by any authority cited to us except *Stanley L. Bloch, Inc. v. Klein*, 45 Misc. 2d 1054, 258 N.Y.S.2d 501 (1965). In that case the auditor specifically advised the client of inaccuracies in its financial reports, and the client disregarded or failed to act on that advice. That is not the situation here; the question of the relationship between the manner in which Coopers & Lybrand conducted the audit and Lincoln Grain's losses is one of proximate cause and is for the jury. Coopers & Lybrand also cites a trial court's decision, *Gordon v. Lipoff*, 320 F. Supp. 905 (W.D. Mo. 1970), as supporting its position. Whatever precedential value a trial court's decision may have, the case does not support Coopers & Lybrand's position. That case was decided under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a. et seq. (1976), and a rule thereunder, and held that corporate managers could not maintain an action for lost profits against the accountants under that act and rule.

We must bear in mind that a motion for directed verdict is to be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Bank of Valley v. Mattson*, 215 Neb. 596, 339 N.W.2d 923 (1983). The evidence in this case is such that it certainly cannot be said as a matter of law that Lincoln Grain's losses were not caused by the manner in which Coopers & Lybrand performed its duties.

REVERSED AND REMANDED
FOR A NEW TRIAL.

KRIVOSHA, C.J., not participating.