HIGH PLAINS COOPERATIVE
ASSOCIATION, Plaintiff,

v.

MEL JARVIS CONSTRUCTION CO.,
INC., et al., Defendants.

HIGH PLAINS COOPERATIVE
ASSOCIATION, Plaintiff,

v.

FARMLAND INDUSTRIES,
INC., Defendant.

Nos. CV88-L-224, CV88-L-248.

United States District Court,
D. Nebraska.

May 9, 1991.

---

Baylor, Evnen, Curtiss, Grimit & Witt, Stephen S. Gealy, Lincoln, Neb., for plaintiff.

Wolfe, Anderson & Beverage, Robert L. Anderson, Stephen Ahl, Lincoln, Neb., for defendants.

Gaines Mullen Pansing Hogan, David D. Ernst, Omaha, Neb., for U.S. Fidelity.

Cline, Williams, Wright, Johnson & Oldfather, Kevin Colleran, Lincoln, Neb., for third party defendant Farmland.

Hansen, Engles & Locher, P.C., Thomas Locher, Gretchen Harvey, Omaha, Neb., for third party defendants Lamoreauxs.

## ORDER

DAVID L. PIESTER, United States Magistrate Judge.

Pending before the court is a motion to intervene by the insurer of defendant Jarvis Construction Company, United States Fidelity and Guaranty Company (USF & G). Filing # 185. USF & G seeks to intervene for the limited purpose of submitting special interrogatories to the jury on the issue of damages.

This litigation commenced with High Plains Cooperative Association suing Jarvis Construction Company for alleged breach of contract in the construction of a grain storage facility. It is alleged that the grain bin collapsed as a result of the defendant's "breach of ... contract which included failing to conform to the specifications for installation of the product and failing to perform its obligations in a workmanlike manner." Filing # 1, ¶ 6. Other third party defendants, as subcontractors on the project, have been dismissed by summary judgment or voluntary dismissal, see filings 76, 119, & 142 and a separate action filed by the plaintiff against the seller of the materials for the grain bin, Farmland Industries, has been consolidated with this action, filing 151.

USF & G is the general liability insurer for defendant Jarvis Construction under a policy issued to the defendant. Pursuant to that policy the insurer is providing legal representation to Jarvis in the present suit, although it is defending this action under reservation of rights. Due to "a conflict or potential conflict of interest involving Jar-

vis and its appointed counsel," this motion to intervene has been filed by special counsel retained by USF & G solely for purposes of this motion. Filing # 185, ¶ 4.

The purpose of this motion by USF & G is to submit special interrogatories to the jury which will distinguish whether any award of damages against Jarvis is based upon "damage to the structure itself caused by the negligent acts of Jarvis Construction" or " 'resulting' or consequential damages suffered by the Plaintiff." (Brief of Intervenor at 1). USF & G asserts that such a designation of damages would "avoid the necessity of a second lawsuit" between it and Jarvis Construction on the issue of liability coverage under the policy. It is alleged that the policy of insurance issued to Jarvis would not cover damages to the grain storage structure caused by the negligent acts of Jarvis, but would cover consequential damages suffered by the plaintiff.

■ USF & G seeks to intervene not as a matter of right, Fed.R.Civ.P. 24(a), but rather seeks permissive intervention pursuant to Rule 24(b). Rule 24(b)(2) permits intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." The Rule further states that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the parties." A district court's discretion under Rule 24(b) is broad. *SEC v. Everest Management Corp.*, 475 F.2d 1236, 1240 (2d Cir.1972).

There is precedent for allowing intervention such as that sought here by USF & G. In *Fidelity Bankers Life Ins. Co. v. Wedco, Inc.*, 102 F.R.D. 41 (D.Nev.1984), two "errors and omissions" insurance carriers sought to intervene in an action brought by a life insurance company against insurance agents who allegedly participated in fraud and deception utilized by an insured in obtaining several life insurance policies two years before his death. The errors and omissions carriers sought intervention for the purposes of attending discovery proceedings, receiving all discovery, pleadings and correspondence, and, finally, to propose special interrogatories and verdicts for submission to the jury pursuant to Fed. R.Civ.P. 49.

After concluding that the carriers were not entitled to intervene as a matter of right pursuant to Rule 24(a), the court examined the applicant's request for permissive intervention under subsection (b) of that rule. The court first determined that the extent of coverage question raised by the intervenor/carriers had questions of fact in common with the main action. The court found that "in order to be entitled to punitive damages [in the main action], a plaintiff must prove [under state law] that the defendant acted with fraud, oppression, or malice." Further, the court determined that the errors and omissions policy at issue excluded "[d]amages resulting from fraudulent or malicious acts of the insureds."

The court then found that any delay in considering special interrogatories or verdicts proposed by the intervenor would not be significant, and, further, that the Federal Rules of Civil Procedure would allow intervenors to attend all discovery conferences and receive the requested materials. 102 F.R.D. at 44.

Finally, the only remaining question was whether the proffer of special interrogatories and verdicts would prejudice the rights of the parties to the main action. The court reasoned that its power to specifically limit the scope of that intervention would guard against any potential prejudice to the parties.

> In this action any right to proffer special interrogatories or verdicts would not infer or imply that the Court would feel obligated to submit them to the jury. The insurance companies may not compromise the interests of their insureds herein. (Citation omitted). They have represented that they recognize and intend to honor this requirement.

Thus, permitting intervention here does not assure that the jury will be asked to allocate any money damages according

to the nature of the acts giving rise thereto.

\* \* \* \* \* \*

[T]he Court will rule on the validity of any proposed special interrogatories or verdicts at the appropriate time, after the parties have been given full opportunity to review and object to the same.

102 F.R.D. at 44.

The *Wedco* court cited as supporting authority *Plough, Inc. v. International Flavors and Fragrances, Inc.*, 96 F.R.D. 136 (W.D.Tenn.1982), where that court also allowed intervention for the limited purpose of submitting special interrogatories. The *Plough* court did not engage in any extended discussion of its holding, but simply noted that the scope and policy of the Federal Rules of Civil Procedure were to be construed to "secure a just, speedy, and inexpensive determination of every action." Rule 1, and pursuant to the criteria of Rule 24(b), intervention for that limited purpose was proper. 96 F.R.D. at 137. As the *Wedco* court noted, the court in *Plough* specifically "reserv[ed] judgment until such time interrogatories [were] submitted on whether they shall be employed in returning a verdict...." *Id.*

There is, as well, precedent for the proposition that courts may deny intervention by insurers for even the limited purposes sought here. In *Restor–A–Dent Dental Lab. v. Certified Alloy Prod.*, 725 F.2d 871 (2d Cir.1984), the court of appeals upheld a district court's denial of an insurer's motion to intervene for the purpose of proffering special interrogatories to the jury. In that case the insurer asserted that under state law the policy of insurance issued to the defendant/insured, who was being sued for breach of contract for delivering defective alloy used in dental products, obligated the insurer to pay only "property damage" which did not include such items as "loss of profits, loss of accounts, and loss of goodwill" for which the plaintiff in the main action was seeking damages.

The circuit court held that the district court had not abused its discretion in denying the motion due to "significant consider-ations" involved in the case. First, it was noted that the insurer did not have any "great need for the relief sought" because the trial judge would likely require a separate verdict for each of the three causes of action brought by the plaintiff, thus reducing the insurer's concern to only a question of coverage as to part of the first cause of action for "loss of production time." 725 F.2d at 877.

Second, the court noted that there was no assurance that the intervention would not unduly delay the main action, and an appeal of the court's failure to submit the requested interrogatories as framed by the insurer may likely complicate an appeal of the main action.

Finally, the circuit court noted that unlike the *Plough* case, the defendant in *Restor–A–Dent* was being represented by counsel provided by the insurer/intervenor which "may well exacerbate a potential conflict of interest for the attorney furnished by [the insurer] to represent [the defendant]," and could deter settlement as well. *Id.* Further, the court noted:

Moreover, [the insurer] failed to submit the disputed insurance policy to the district court. As Restor–a–Dent pointed out in stressing the deficiency below, the policy would have enabled the court to determine whether "there is a legitimate controversy" between the insurer and its insured or whether "this is merely a tactical move" to affect settlement talks or the outcome of the action. We could, of course, condition reversal on [the insurers] satisfying the district court in this regard, but we see no persuasive reason to relieve [the insurer] of the consequences of its failure, particularly when the case is ready for trial.

725 F.2d at 877.

I note that in dicta the circuit court went on to point out that "it would likewise not have been an abuse of discretion had the trial judge permitted the insurer to intervene under Rule 24(b)(2) for the limited purpose of proposing interrogatories to the court...." *Id.* It was also noted that nothing in the opinion would prevent the district judge from submitting the proposed

interrogatories in the case to the jury. *Id.* at n. 7.

USF & G also cites Nebraska case law in support of its motion. In *Herrera v. American Standard Ins Co.,* 203 Neb. 477, 279 N.W.2d 140, the plaintiff recovered a $5,000 verdict from an uninsured motorist who caused plaintiff personal injury and property damage in a collision with plaintiff's motorcycle. Plaintiff then filed for declaratory judgment against his insurer to collect under the uninsured motorist provision of his insurance policy with American Standard. The district court granted summary judgment for the insured for the full $5,000 verdict plus $2,000 in attorneys fees. American Standard appealed and alleged that it could not be held liable for any part of the $5,000 verdict which represented "property damage" because the uninsured motorist provision in the policy excluded such damages.

The court noted that when the plaintiff filed his original suit the "law firm presently representing defendant insurance company entered an appearance for [the plaintiff] and filed an answer on his behalf." 203 Neb. at 479, 279 N.W.2d 140. Plaintiff's privately retained counsel also appeared for him. Some seven months into the litigation, the defendant insurance company's present counsel withdrew from representation of the plaintiff and filed a motion to intervene on behalf of American Standard. On September 20, 1977, just before the jury was to be selected, counsel for American Standard withdrew the motion to intervene, and reentered the case on behalf of the plaintiff. *Id.* at 479–80, 279 N.W.2d 140. No special verdict was requested nor given to the jury.

On appeal, American Standard argued that neither its policy nor Nebraska law allowed the recovery of property damage under policies with uninsured motorist coverage provisions. The court held, however, "[w]e do not deem it necessary to decide that issue at this time," because even assuming that property damage is covered, "it would not change the result in this case in view of our conclusion, ... that there is no way of knowing in the instant case how much, if any, property damage was included in the verdict of the jury." *Id.* at 482, 279 N.W.2d 140. The court then explained its holding as follows:

> The jury returned a general verdict. Although evidence of property damage was presented to the jury, the verdict did not delineate what amount, if any, was for the plaintiff's property damage and what amount was for his personal injuries.
>
> \*   \*   \*   \*   \*   \*
>
> [The insurer] is asking this court to grant it the opportunity to relitigate and recompute the amount of its insured's bodily injuries by showing that property damage may have been included in the jury's verdict in the original suit against the uninsured motorist. That result could have been reached by means of a request for a special or itemized verdict; and *if deemed material as a defense* should have been done in the original trial, and not in extended litigation.

203 Neb. at 483, 279 N.W.2d 140 (Emphasis added).

As noted by the *Wedco* court, "the possibility that relitigation of the same issue may be avoided is a strong reason to permit intervention." 102 F.R.D. at 44. I am not convinced, however, that this case presents such a problem. USF & G argues that it is not contractually liable for "damage to the [grain] structure itself caused by the *negligent* acts of Jarvis Construction." (Brief of Intervenor at 1). The main action herein, however, does not allege that the grain bin collapse was caused by negligence. The main action alleges breach of contract in "failing to conform to the specifications for installation" and "failing to perform its obligations in a workmanlike manner." This is an action for breach of contract, not an action in tort for negligence.

My concern in allowing this intervention, even for the seemingly innocuous purpose of special interrogatories, is that USF & G appears to be characterizing this suit as a negligence action for which, according to the stated policy terms, it would have limited liability as to the damage to the grain bin itself. That characterization does not

conform with the original complaint filed in this court which explicitly shows that the plaintiff has elected to bring this suit as a breach of contract action. Allowing the intervention of USF & G would be, by implication, characterizing this matter as a suit for "negligent breach of contract," an action which the Nebraska Supreme Court has cast in disfavor as of late. *See, J.L. Healy Constr. Co. v. State,* 236 Neb. 759, 463 N.W.2d 813 (1990) (distinguishing *Lincoln Grain v. Coopers & Lybrand,* 216 Neb. 433, 345 N.W.2d 300 (1984) where the parties tried the case as a negligent failure to perform a contract and the Nebraska Supreme Court was, therefore, required to dispose of it on that basis). *See also, Hiway 20 Terminal, Inc. v. Tri–County Agri–Supply, Inc.,* 232 Neb. 763, 443 N.W.2d 872 (1989) (Suit against contractor who built grain bin which began bulging and sagging after construction tried as a negligence action, and disposed of on appeal as such, with concurrence noting the action arose from contractual duties, and "lament[ing] the apparent developing proclivity to forsake all civil jurisprudence save the law of negligence").[1]

As were the circumstances in *Restor–A–Dent,* the insurer herein has not submitted a copy of the policy of insurance issued to Jarvis Construction, and it is not possible to ascertain the precise scope of USF & G's coverage exclusions or to determine its liability for a breach of contract by its insured. I hesitate to allow an insurer to intervene in an action simply on the basis of an assertion in its brief that the policy at issue excludes coverage for the negligent acts of the insured.

USF & G relies upon the Nebraska Supreme Court's exhortation in *Herrera, supra,* which strongly suggested that the appellant insurer should have requested special interrogatories to delineate property damages from personal injury damages. In that case, however, the court stated that such a request could accomplish the desired result "if [that distinction is] deemed material as a defense...." 203 Neb. at 483, 279 N.W.2d 140. In this case I conclude that USF & G has not adequately shown that its defense, i.e., that it is not liable for damages caused by the negligent acts of Jarvis, is material to a claim alleging a breach of contract. As noted by the court in *Wedco, supra,* an applicant for intervention must first show that its "future defense" in a coverage dispute has "questions of fact in common with the main action." This USF & G has not done.

Of particular importance, I am concerned in this case with the potential for a conflict of interest for the counsel provided by USF & G to represent Jarvis Construction. Characterizing this action as one sounding in tort (as a negligence action) rather than breach of contract may adversely affect the potential liability of either the insured or the insurer, and counsel for Jarvis may be put in the intolerable position of taking a position that is potentially hostile to the

---

1. Nor do I read the plaintiff's allegation of "failure to perform the contract in a workmanlike manner" as setting forth a claim alleging negligence. The Nebraska Supreme Court explicitly rejected the notion that "if there has been negligence in the performance of a contract, an action in tort may be had because the injury ... results not from the breach of contract but from negligence in the performance of it," because there is a common law duty to perform every contract with skill and in a workmanlike manner. *Fuchs v. Parsons Constr. Co.,* 166 Neb. 188, 199, 88 N.W.2d 648 (1958). In addition, this court and the Eighth Circuit have consistently followed the *Fuchs* rule in cases raising this issue. *See, Nebraska Public Power District v. General Electric,* No. CV75–L–142, 1979 WL 3949 (D.Neb.June 29, 1979) (Urbom, J.); *cited with approval, Cincinnati Gas & Elec. Co. v. General Elec. Co.,* 656 F.Supp. 49, 60–61 (S.D.Ohio 1986); *Nelson v. Production Credit Ass'n. of the Midlands,* 729 F.Supp. 677, 688 (D.Neb.1989); *Lincoln Carpet Mills v. Singer Co.,* 549 F.2d 80, 82–83 (8th Cir.1977).

The seeming anomaly in Nebraska law created by *Lincoln Grain, supra,* is in reality explained by the fact that the case did not involve a construction contract the terms of which were defined by detailed plans and specifications. That case involved an agreement, apparently not evidenced by a specific written contract, for professional auditing services to be performed according to "generally accepted auditing standards." 216 Neb. at 436, 345 N.W.2d 300. There was no allegation that the auditing firm breached specific terms of any written agreement, only that it failed to follow accepted auditing standards. The case before me today involves the type of contract dispute at issue in *Fuchs* and is therefore controlled by that rule.

insured. My concern for this matter is heightened by the fact that no other party responded to this motion by USF & G, and indeed such a response by Jarvis potentially could be interpreted as a failure on its part to cooperate with the insurer. It clearly is in Jarvis' interest not to have the special interrogatories propounded to the jury, yet it has not argued against the motion.

Finally, I also note that "[s]ince the intervention sought herein is permissive, independent bases for jurisdiction are required." *Wedco, supra* at 45, *citing, Blake v. Pallan,* 554 F.2d 947, 956 (9th Cir.1977). While USF & G may meet the diversity requirement, it has not alleged in its motion or pleading in intervention that it meets the amount in controversy requirement.

IT THEREFORE HEREBY IS ORDERED that the motion to intervene, filing # 185, is denied.