LINCOLN TELEPHONE AND TELEGRAPH COMPANY,
A CORPORATION, APPELLANT AND CROSS-APPELLEE, V.
COUNTY BOARD OF EQUALIZATION OF THE
COUNTY OF YORK OF THE STATE OF NEBRASKA AND
COUNTY OF YORK, NEBRASKA,
APPELLEES AND CROSS-APPELLANTS.

308 N.W.2d 515

Filed July 17, 1981.   Nos. 43343, 43344.

Richard W. Smith and Charles E. Lowe of Woods, Aitken, Smith, Greer, Overcash & Spangler for appellant.

Vincent Valentino, York County Attorney, and Michael J. Murphy for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

These two actions are appeals from the County Board of Equalization (hereinafter board) of York County, Nebraska, denying the protests of the plaintiff, the Lincoln Telephone and Telegraph Company (hereinafter LT&T), by which it sought reductions in the assessed value of its personal property located in York County, Nebraska, for the years 1976 and 1977. For the year 1976, LT&T returned its property at an assessed value of $1,159,566. For the year 1977, it returned its property at an assessed value of $1,482,914. In making this return it used the prescribed Form 10. More will be said about Form 10 when the contentions of LT&T are discussed. By its protests, LT&T asked that the assessed value for 1976 be reduced to $651,676 and for the year 1977 to $829,584. The board denied the protests for both years and, for the year 1976, increased the valuation to $1,420,815.

The two actions were consolidated for trial on appeal to the District Court and are consolidated for briefing and argument in this court.

The District Court reversed the action of the board in increasing the 1976 valuation and affirmed the action in denying the requested reductions. We affirm the judgment of the District Court.

The basis of LT&T's protests to the board was the claim that, although its personal property was returned at 35 percent of its actual value for each of the years in question, real estate in the county was being assessed at 19.67 percent of actual value for the year 1976 and at 19.58 percent of actual value for the year 1977. It asserted, therefore, that it was being taxed discriminatorily in violation of the provision of Neb. Const. art. VIII, § 1, which requires that taxes upon tangible property (with exceptions not pertinent here) shall be levied by valuation uniformly and proportionately. It also asserts that valuation was discriminatory in violation of the equal protection clause of the fourteenth amendment to the U.S. Constitution. See, *Grainger Brothers Co. v. Board of Equalization*, 180 Neb. 571, 144 N.W.2d 161 (1966); *Sioux City Bridge v. Dakota County*, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923). In accordance with the mandate of these two cases, LT&T urges that the valuation of its property be reduced by the difference between 35 percent and the 19.67 and 19.58 percentages earlier mentioned and which represent the sales assessment ratio as determined by its expert witness using data furnished by the Department of Revenue.

Before discussing the evidence in this case and the specific contentions and arguments of the parties, we first state the legal principles of law governing our review and those which are pertinent to a determination of the principal issue which is the question of proportionality.

An appeal to the District Court from action of the county board of equalization is heard as in equity,

and upon appeal therefrom to this court it is tried de novo. *Grainger Brothers Co. v. Board of Equalization, supra; Collier v. County of Logan,* 169 Neb. 1, 97 N.W.2d 879 (1959). Taxes on all tangible property and franchises are to be levied by valuation uniformly and proportionately. *Grainger Brothers Co. v. Board of Equalization, supra.* The burden of proof is upon a taxpayer to establish his contention that the value of his property has not been fairly and proportionately equalized with all other property, resulting in a discriminatory, unjust, and unfair assessment. *Grainger Brothers Co. v. Board of Equalization, supra.* Authorities charged with the duty of valuing property for taxation are not limited to just one method of determining value, and the ultimate question is whether the method used ultimately attains a reasonable degree of uniformity in value. *Banner County v. State Board of Equalization & Assessment,* 206 Neb. 715, 295 N.W.2d 682 (1980). Tangible property is to be valued at actual value for tax purposes and assessed at 35 percent of actual value; however, an assessment will not be set aside merely because it was not assessed at actual value where property is proportionately valued in a reasonable degree. Neb. Rev. Stat. § 77-201 (Cum. Supp. 1980); *Chicago, R.I. & P.R. Co. v. State,* 111 Neb. 362, 197 N.W. 114 (1923).

A great deal of the record in this case is taken up with evidence, including expert opinion testimony, as to whether the use of the sales assessment ratios determined actual value of the real estate for tax purposes in this particular case. The testimony of the board's witnesses tended to show, for a variety of reasons, that the sales assessment ratio was not an indicator of market value. The evidence of LT&T tended to establish that the sales assessment ratio was a valid indicator of market value in this case. Considerable evidence was introduced to show that personal property generally was valued at actual value. Other testimony, oral and documentary, all by

experts, was devoted to establishing the value of LT&T property as a unit and allocating a proportion of that value to the personal property having its situs in York County. LT&T's evidence tended to show that the actual value of its personal property was less than that shown on Form 10. The board's evidence tended to show that the actual value of the LT&T property was considerably greater than that shown on Form 10, and that the use of the formulas provided by Form 10 did not result in a determination of actual value. The board's expert testified the actual value of the personal property was as follows: January 1, 1976, $4,765,800; January 1, 1977, $6,042,490. LT&T's expert fixed the values of the same property as follows: January 1, 1976, $2,754,900; January 1, 1977, $3,320,250. These conflicting opinions contrast with the returned value of $3,313,045 for 1976 and $4,236,897 for 1977.

The District Court, based on that evidence, wrote memorandum opinions in which it found, among other things, that real estate in York County was systematically assessed at less than actual value; that personal property generally was valued at actual value; that it was not possible, however, to determine from the evidence the degree of difference; and that the values of the personal property of LT&T reported on Form 10 for the years 1976 and 1977 were not the actual values of the property for the years in question. It also found that there was no evidence to support the 1976 increase in valuation.

The keystone of LT&T's position is stated in its brief as follows: "It should be presumed that the use of the Form 10 for the return of telephone company tangible personal property results in the return of such property at its fair and reasonable value for tax purposes. The County had the burden of overcoming this presumption and of establishing by clear and unequivocal proof that the use of the Form 10 resulted in an unfair and unreasonable determination of the actual value of

LT&T's tangible personal property situated in York County." LT&T points out that Neb. Rev. Stat. § 77-304 (Reissue 1976) requires the Tax Commissioner to approve all forms, schedules, books of instructions, etc., as may be necessary or expedient to the proper administration of the tax laws, and that Neb. Rev. Stat. § 77-305 (Reissue 1976) requires the Tax Commissioner to prescribe forms for the schedules for listing and assessment of personal property. It also notes that rule 16 of the Property Assessment and Appraisals Rules and Regulations, Nebraska Department of Revenue (1971), has approved Form 10.

It is now necessary to describe the information called for by Form 10. Line 1 requires the disclosure without itemization of the *book* value of tangible personal property (except materials and supplies) outside cities and villages. Line 2 requires the disclosure without itemization of the total *book* value of the same kind of property in cities and villages. Line 3 is simply the sum of lines 1 and 2. Line 4 is 60 percent of line 3. Line 5 requires the listing of the *actual* value of materials and supplies. Line 6 is described as the *total actual value* of all tangible personal property and is the sum of lines 4 and 5, i.e., book value less 40 percent depreciation. Line 7 is the assessed value, or 35 percent of line 6.

The testimony indicated that new items are added to the amounts on lines 1 and 2 at cost, including installation, etc. No further depreciation is ever taken except the 40 percent resulting from the use of the 60 percent component on line 4.

To support its contention that the use of Form 10 should be presumed to result in a determination of actual value and that the burden of proof is upon the taxing authorities to show otherwise, LT&T relies upon the general rule that actions taken by a governmental agency are presumed valid and the burden is upon the litigant to show otherwise. *Hammer v. Department of Roads*, 175 Neb. 178, 120 N.W.2d

909 (1963). That case involved an eminent domain proceeding in which highway construction limited access to certain property owners. The landowners sought to enjoin the right of the exercise of the power of eminent domain. There was also a claim of estoppel. There was no question in that case but that the power of eminent domain was properly exercised, and the principles of law relating to presumptions of the legality of the action of a government agency were not necessary to the determination of the case and certainly have no application in this particular case.

LT&T also relies upon the holding of this court in *Rodeo Tel. Membership Corp. v. County of Greeley*, 181 Neb. 492, 149 N.W.2d 357 (1967). That case involved the valuation of the tangible personal property of a telephone company. The telephone company reported an actual value of $43,270. The assessor raised the valuation to $86,088. The taxpayer's protest was rejected by the board of equalization and the taxpayer appealed. We affirmed the action of the board.

LT&T here asserts that the court in *Rodeo* placed its approval on the use of Form 10 as a means of determining actual value. The recital of facts in that case leads to an inference that the taxpayer did not report on Form 10. It also may be inferred that the assessor, in increasing the valuation, used a method, although not described literally as Form 10, that appears to have been that form or one at least calling for identical information prescribed by the Form 10 here involved. The opinion in that case recites that the information is based upon valuations reported by the taxpayer to the Nebraska State Railway Commission for determining the value of the tangible personal property included in the rate base for rate-making purposes.

The *Rodeo* case did not involve a question of "uniformity" or "proportionality" of taxation. The only question involved was whether the property was valued *in excess* of its actual value. The court in that

case noted at 495, 149 N.W.2d at 359: "[T]he 40 percent allowance for depreciation here seems reasonable, *if not excessive*, in arriving at an actual value for taxation." (Emphasis supplied).

The two cases in question and the statute do not support LT&T's claim of a presumption that Form 10 establishes actual value. The Nebraska Constitution, art. VIII, § 1, establishes the rule of taxation "by valuation uniformly and proportionately." Forms and schedules approved by the state for the purpose of establishing value must all be directed to effectuating the constitutional principle of proportionality or the statutory command that property be taxed at actual value. The adoption or approval of a form cannot prevail over the Constitution.

As far as burden of proof is concerned, *Rodeo* itself recites the rule that the taxpayer must establish that the value is excessive.

We have frequently recognized that approximation of value and uniformity is all that can be accomplished and that substantial compliance with the requirement of equalization and uniformity of taxation laid down by the federal and state Constitutions is all that is required, and such provisions are satisfied when designed and manifest departure from the rules is avoided. *Collier v. County of Logan*, 169 Neb. 1, 97 N.W.2d 879 (1959).

In order for a taxpayer to secure a reduction in the assessed value of his property, it must be demonstrated that the assessed value is grossly excessive, or that its value has not been fairly and proportionately equalized. *Collier v. County of Logan, supra.*

Even though it be conceded that LT&T's evidence has established that real estate is taxed in York County for the years in question at approximately 20 percent of actual value, rather than the 35 percent required by statute, it still remains necessary, in order for LT&T to show disproportionate taxation, to prove that its tangible personal property is assessed at sub-

stantially in excess of 20 percent of actual value. This it has not done. First, we decline to say that book value, less depreciation of 40 percent, establishes a presumption of actual value. Additionally, there is substantial evidence that the amounts reported on Form 10 were substantially less than actual value. Evidence in the record indicates that while Form 10 may have at one time resulted in a value approximating actual value, that was no longer true. A number of different types of analyses and appraisals had been done by the Department of Revenue which indicated that the information called for by Form 10 did not, under current inflationary conditions, accomplish that purpose. The board's expert testified that the use of Form 10 resulted in equalization with real estate because "there is as big a lag here as there is in real estate."

One more item pertinent to the proportionality discussion may be added. Because there were no sales of telephone companies such as LT&T, all expert witnesses who testified valued the property of the company by means of the capitalization of income approach and then allocated a portion of that value to York County equal to the percentage that the personal property of LT&T located in York County bore to the total personal property of LT&T not otherwise taxed. On surrebuttal, the board called as a witness a professor of finance who was also a certified public accountant. He testified that the method used by LT&T's principal valuation witness resulted not in a valuation of "the net utility plant," but in "a valuation of the debt and equity securities of the Lincoln Telephone and Telegraph Company."

We find on de novo review that LT&T has failed to establish by the evidence that its tangible personal property in York County was assessed at more than 20 percent of its actual value and, therefore, it is not entitled to the relief which it requests. The fact that the evidence tended to show that other types of personal

property were valued at close to 35 percent of actual value does not give LT&T any cause for complaint, because it obviously was not harmed because another taxpayer's property was valued at a greater proportion of actual value than its own.

LT&T argues some additional assignments of error which it claims require either reversal or that this court disregard certain portions of the board's evidence. LT&T objected to the surrebuttal testimony of the witness earlier referred to because the expert did not hold a real estate appraiser's license. It relies upon the provisions of Neb. Rev. Stat. § 81-8,286(1) (Cum. Supp. 1980), which provides: "No person shall, after January 1, 1974, act as a real estate appraiser without a license issued by the commission. This section shall not apply to any person exempted by any other provision of sections 81-8,276 to 81-8,287. No person shall testify as an appraiser before any tribunal, court, judge, referee, or judicial committee without being licensed under the provisions of sections 81-8,276 to 81-8,287." The argument is that, because the assets of the whole company must be valued and then the value allocated, the witness necessarily had to value real estate and hence was disqualified as a witness under the above statute. The objection is not well taken for two reasons. It does not appear from the record that the witness was making an appraisal of real estate. He was making a critique of a method of appraisal of a public utility property and in particular the use of the capitalization method to value intangible personal property of a utility in the manner that it was done by the expert witness whose appraisal was being criticized.

The record establishes that the valuation of public utilities, including telephone companies, calls for specialized knowledge that a person holding a real estate appraiser's license would not necessarily have. Neither LT&T nor the board's principal witness on valuation appears to have been licensed under

§ 81-8,286 or under the reciprocity provisions of Neb. Rev. Stat. § 81-8,279 (Cum. Supp. 1980), although both appear to have qualifications as real estate appraisers as well as appraisers of utility properties. The board objected to testimony of LT&T's valuation witness, a large portion of whose testimony related to establishing the sales assessment ratio valuations of real estate in York County. The objection was founded on the provisions of § 81-8,286(1). The trial court overruled the objection. Both the witness for LT&T and the witness for the board, on the issue of valuation of utility property, used information furnished by others, specifically LT&T's report to stockholders which showed the valuations of the various classes of property belonging to the company. This they were entitled to do under the provisions of Neb. Rev. Stat. § 27-703 (Reissue 1979), which says: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

LT&T assigns as error the refusal of the trial court to require the production of what is referred to as the "Cleminshaw appraisal." This was a countywide appraisal being performed pursuant to a contract with the county board. The appraisal began in November 1974 and was substantially complete by January 1, 1977, although the record does not show that it had yet been delivered to the board. The apparent purpose of requiring the production was to fortify LT&T's claim that real estate in the county was undervalued in the years in question. We point out, however, that LT&T prevailed on this contention and the trial court so found, and we have no reason to find otherwise. Production of the appraisal would not have aided LT&T for reasons already discussed, namely, in order to establish disproportionate

taxation the taxpayer is required to prove both parts of the equation, i.e., the percentage of actual value at which its own property was assessed and that the other property in the same class (real and personal property [with specific exceptions, such as automobiles, not pertinent] being in the same class) is undervalued. LT&T has failed to establish the first part of that equation.

LT&T urges that the trial court erred because it founded its decision upon a purported distinction between actual value and market value of real estate and that it was not possible for the court to determine the percentage of difference between the actual value of real estate and the actual value of personal property and, therefore, could give LT&T no relief.

LT&T points out that in interpreting Neb. Rev. Stat. § 77-201 (Cum. Supp. 1980) and § 77-112 (Reissue 1976), we have repeatedly said that for purposes of taxation, actual value, market value, and fair market value are synonymous terms. *Richards v. Board of Equalization*, 178 Neb. 537, 134 N.W.2d 56 (1965).

Our reading of the memorandum opinion leaves us puzzled as to the distinction the trial court was making. We, however, adhere to the historic definition. We recognize, of course, that in cases such as this where there is no market or no sale of like property, actual or market value must be arrived at by theoretical methods commonly used by appraisers qualified in the particular field. Whatever the trial court meant by its discussion, it nonetheless arrived at the correct result. A proper judgment will not be reversed because the trial court gave an erroneous reason for its rendition. *Strauss v. Square D Co.*, 201 Neb. 571, 270 N.W.2d 917 (1978).

The board has cross-appealed and urges that the increase in the 1976 valuation made by the board be restored. The trial court found that the increase was supported by no evidence. The record indicates that the increase was based upon sale by LT&T of

the stock of a cable television system owned by it, the total sale price of which was greater than the actual value of the assets returned for taxation. Such a sale is not the sale of the tangible personal property of the corporation. Even if we assume comparability of the nature of the underlying assets (and there is no evidence to show that), that evidence did not support the increase.

The judgment of the lower court is, in all respects, affirmed.

AFFIRMED.