## L. J. VONTZ CONSTRUCTION CO., INC., APPELLANT, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.

432 N.W.2d 7

Filed November 18, 1988.    Nos. 88-156, 88-157.

Jeff C. Miller, of Young & White, for appellant.

Robert M. Spire, Attorney General, Warren D. Lichty, Jr., and Sharon M. Lindgren for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

The appeals by L. J. Vontz Construction Co., Inc., pertain to Vontz' two claims filed with the Director of Administrative Services, who found that Vontz' claims were not based on contracts with the Department of Roads of the State of Nebraska, but were tort claims for which the director lacked jurisdiction to determine whether the claims were meritorious.

In April 1983, Vontz entered two construction contracts with the State's Department of Roads (DOR) to repair asphalt shoulders on roads in Platte and Fillmore Counties, including asphalt removal, compacting the subgrade soil, recycling the removed asphalt, and replacing asphalt on road shoulders. Each of the Vontz-DOR contracts contained a clause incorporating "the general and detailed plans, the 1973 Standard Specifications for Highway Construction . . . ; the

contractor's bond; the proposal; all special provisions; and all supplemental agreements" into the contract. Section 102.07 of the DOR's 1973 Standard Specifications for Highway Construction provides in part that the DOR "will prepare full, complete, and accurate plans and specifications giving such directions as will enable any competent mechanic or contractor to carry them out." The contracts also provided that Vontz "shall not do any work . . . not covered and authorized by this contract, unless ordered in writing by the Engineer."

On May 27, 1983, Vontz began removing the asphalt shoulders in the Fillmore County project and encountered "very wet subgrade soil conditions," which made mechanical soil compaction impossible without DOR's further directions. In spite of Vontz' repeated requests, DOR provided no further directions until June 24, 1983, when DOR directed Vontz to remove, mix, dry, and recompact the wet subgrade soil. When Vontz encountered further unstable subgrade soil conditions during the "lay-down" phase of the project in Fillmore County, DOR's project engineer required that the unstable areas be "cored out" and filled with recycled asphalt. As a result of the subgrade soil conditions, the Fillmore County project was substantially delayed and required Vontz to use additional road barricades and safety equipment, which cost in excess of $5,000.

On August 16, DOR informed Vontz that 33 percent of the allotted time for completion of the Platte County project had expired, but no work had been completed on the project. According to Vontz, DOR knew that Vontz contemplated completion of the Fillmore County project before Vontz would move its equipment to the Platte County project. Since the Fillmore County project was delayed by DOR's tardy responses to the problems involving subgrade soil conditions, the Platte County project was not underway according to schedule.

On August 17, Vontz completed major items of the Fillmore County project but was unable to finish the entire project because irrigation runoff had flooded the site for construction of a culvert. Vontz claimed that DOR's conduct in administering and engineering the Fillmore County project had delayed major asphaltic work for 30 days and minor work for

"several months."

On receipt of DOR's notice about lack of progress on the Platte County project, Vontz began work on the project by surface-milling the shoulders as required by a supplemental agreement with DOR. After milling for 4 days, Vontz had to stop because another contractor's work on a requisite culvert had not been completed. Vontz maintained that DOR failed to require the culvert contractor to expedite its work in compliance with the specifications for the Platte County project. Further, Vontz claimed that it could have moved its milling operations to the other side of the culvert and continued operations if DOR had provided a stockpile area. In spite of Vontz' requests, DOR did not provide a stockpile area until June 14, 1984.

Vontz further contended that DOR's plans and specifications were incorrect in the assessment of water levels in four designated "borrow pits" specified for the projects. As a result of the water level discrepancies, Vontz was able to remove less material than needed from the pits and also had to use special equipment to remove wet material, which had to be hauled to a site for drying and processing before use in the projects.

Vontz also claimed that DOR's project inspector, without good reason, repeatedly rejected Vontz' work on the Platte County project and even suspended project operations on November 9, 1983. DOR's final inspection of the Platte County project occurred on October 1, 1985.

In its claims, Vontz asserted that DOR's initial plans and specifications were inadequate and, consequently, necessitated additional compaction work. Vontz also asserted that DOR erroneously computed the amounts due under the contracts. For the Fillmore County project, Vontz claimed that DOR incorrectly deducted in excess of $18,000 under the contract's provision for liquidated damages. For the Platte County project, Vontz asserted that the DOR "required the Claimant to perform work under bid items, but beyond the plans and specifications and made no measurement or payment of these items."

Containing statements of the facts and circumstances set forth above in relation to the construction contracts, Vontz'

claims were filed with the Director of Administrative Services pursuant to Neb. Rev. Stat. § 81-1170 (Reissue 1987), which provides in part:

> All persons having claims against the state, except claims for overpayment of estate taxes and except claims within the jurisdiction of the State Claims Board, shall exhibit the same, with the evidence in support thereof, to the Director of Administrative Services to be audited, settled, and allowed within two years after such claims shall accrue.

Alleging that the Director of Administrative Services lacked jurisdiction to dispose of the claims, DOR requested dismissal of Vontz' claims. The Director of Administrative Services concluded:

> The question before the Director of Administrative Services is whether the Director has jurisdiction over these claims as contract claims. The issue for decision is whether the claims are tort claims or contract claims.
>
> Tort claim is defined in Neb. Rev. Stat. §81-8,210(40 [sic] (Reissue 1981) which, in part provides: "Tort claim shall mean any claim against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his office or employment. . . ."
>
> The claimant has contended that the state was negligent in drafting contract specifications, special provisions, and construction plans; and interference with claimants [sic] performance of the contract. Clearly, the claims are tort claims as that term is defined in Neb. Rev. Stat. §81-8,210(4) (Reissue 1981) of the Tort Claims Act.
>
> The State Claims Board has the exclusive jurisdiction to initially consider tort claims brought against the state. The Director of Administrative Services does not have concurrent jurisdiction to consider claims properly before the State Claims Board. Neb. Rev. Stat. §84-306 (Reissue 1981) provides that all claims shall be exhibited to the Director of Administrative Services ". . . except claims

within the jurisdiction of the State Claims Board. . . ." Accordingly, the claims are tort claims as that term is defined in the Tort Claims Act and the Director of Administrative Services does not have jurisdiction to consider these claims.

> For these reasons, the Motions to Dismiss are granted and the claims thereby denied.

On the basis of Neb. Rev. Stat. § 24-319(1) (Reissue 1985), concerning appellate jurisdiction of the district courts over claims presented to the Director of Administrative Services, Vontz appealed to the district court and filed petitions in conformity with Neb. Rev. Stat. § 24-320 (Reissue 1985). There is no question that Vontz' appeals have been perfected in accordance with the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 et seq. (Reissue 1987), and in compliance with Neb. Rev. Stat. § 77-2407 (Supp. 1987) (aggrieved party's appeal authorized under the Administrative Procedure Act). After determining that Vontz' appeals were governed by the Administrative Procedure Act, the district court found:

> The Director of Administrative Services dismissed the claim presented as being a tort claim and the Director of Administrative Services did not have jurisdiction over tort claims. Upon review of the record made, the Court further finds and determines that the dismissal of the claim was correct in all respects.

The district court then affirmed the order of the Director of Administrative Services, dismissing Vontz' claims.

On appeal to this court, Vontz contends that the district court erred in (1) affirming the order that the director of the Department of Administrative Services lacked jurisdiction to hear the claims in question; (2) conducting a review under the standard prescribed by § 84-917 of the Administrative Procedure Act; and (3) denying a "hearing and determination" pursuant to § 24-319.

Fundamental to a disposition of this appeal is the nature of Vontz' claims. If the claims are negligence claims rather than contract claims, the Director of Administrative Services lacked subject matter jurisdiction because, by virtue of Neb. Rev. Stat. § 81-8,211 (Reissue 1987), the State Claims Board has the

power "to consider, ascertain, adjust, compromise, settle, determine, and allow any tort claim" based on negligence of the State of Nebraska, by which a claimant seeks "money only on account of damage to or loss of property or on account of personal injury or death." See Neb. Rev. Stat. § 81-8,210(4) (Reissue 1987). However, if Vontz' claims are based on contract, the director of the Department of Administrative Services had jurisdiction to determine the merits of the claims pursuant to § 81-1170, which in pertinent part provides: "All persons having claims against the state . . . except claims within the jurisdiction of the State Claims Board, shall exhibit the same, with the evidence in support thereof, to the Director of Administrative Services to be audited, settled, and allowed . . . ." Also, if Vontz claims negligence for which the State may be liable, Vontz has not fulfilled a condition precedent to the district court's determination of a negligence claim, namely, filing the claim with the "Risk Manager of the State Claims Board." Neb. Rev. Stat. § 81-8,212 (Reissue 1987). Cf. *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988) (necessity of a timely filed claim under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983), as a condition precedent to a negligence suit against a political subdivision).

In *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 437, 345 N.W.2d 300, 304-05 (1984), we stated:

> Although the dividing line between breaches of contracts and torts is often dim and uncertain, it has been said that the character of an action as one in tort or on contract is determined by the nature of the grievance, not by the form of the pleadings, with consideration being given to the facts which constitute the cause of action. *Driekosen v. Black, Sivalls & Bryson*, 158 Neb. 531, 64 N.W.2d 88 (1954) . . . .

Thus, to determine whether an action is based on a contract or a tort, a court must examine and construe a petition's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the petition or the form of a pleading.

Contract actions, which arise from a breach of a duty

imposed on one by an agreement, protect a plaintiff's interest in or right to performance of another's promises, whereas tort actions, which arise from a breach of a duty imposed by law, protect a plaintiff's interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property. *Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 88 N.W.2d 648 (1958); *Driekosen v. Black, Sivalls & Bryson*, 158 Neb. 531, 64 N.W.2d 88 (1954); *McNeel v. State*, 120 Neb. 674, 234 N.W. 786 (1931).

The gist of Vontz' claims is that, notwithstanding DOR's contractual duty to prepare "full, complete, and accurate plans and specifications" and provide "directions" to enable Vontz to carry out the planned projects, DOR furnished inadequate and misrepresented engineering and design for the projects, which resulted in substantial project delays and increased Vontz' costs to complete the projects. Although Vontz alleged that DOR failed to properly administer the contracts during Vontz' work under the contracts, all the problems regarding Vontz' performance stem from allegedly inadequate plans, specifications, and engineering supervision for the projects.

In response, DOR maintains that its duty to prepare plans and specifications for the projects is a duty imposed by Neb. Rev. Stat. § 39-1316 (Reissue 1984), which provides in part: "The department shall be responsible for the preparation and adoption of plans and specifications for the establishment, construction, and maintenance of the state highway system." Because the duty to prepare adequate plans and specifications is imposed by statute, DOR argues, any failure to carry out that duty constitutes a tort rather than a breach of contract.

However, DOR's position and argument ignore the nature of the claims filed by Vontz. While DOR fulfilled its statutory duty to prepare the plans for the projects, the contract with Vontz involved more than DOR's statutory duty under § 39-1316. In its contract with Vontz, DOR agreed to prepare project plans and specifications and then incorporated § 102.07 of the 1973 standard specifications, which obligated DOR to "prepare full, complete, and accurate plans and specifications," and provide "directions" to enable the contractor to carry out plans and specifications for a project.

The precise nature and degree of DOR's noncompliance with the requirement to provide full, complete, and accurate plans, as well as furnish appropriate directions,.relate to DOR's failure to comply with an express contractual provision in the agreements between Vontz and DOR. Consequently, Vontz' claims are based on a breach of an express contractual duty, not a breach of a statutory duty, and, therefore, are contractual in nature.

Additionally, Vontz contends that the State, relying on the contracts' provisions for liquidated damages, deducted amounts from the totals otherwise payable under the construction contracts. Liquidated damages may have a bearing on the ultimate amounts due Vontz under the construction contracts. However, while liquidated damages, as an expressly stipulated amount to secure performance of a contract, may be recoverable on breach of a contract, liquidated damages are foreign to the damages recoverable in a negligence action. The question about liquidated damages raised in Vontz' claims in relation to the damages sought by Vontz strengthens our conclusion that Vontz based its recovery on contract rather than in tort.

Our conclusion that Vontz' claims are based on contract rather than tort is consistent with the definition of a "tort claim" under the State Tort Claims Act. As already noted, § 81-8,210(4) characterizes a tort claim as one "on account of damage to or loss of property or on account of personal injury or death . . . ." In its claims, Vontz does not seek money from the State on account of "damage to or loss of property," but, rather, requests remuneration for services rendered pursuant to contracts with DOR.

Because Vontz' claims are based on contracts with DOR and not on DOR's negligence, the Director of Administrative Services had the power to determine the merits of the claims by Vontz, that is, the director had jurisdiction to audit, settle, and allow Vontz' claims by virtue of the authority conferred by § 81-1170. The order of the Director of Administrative Services, rejecting jurisdiction concerning Vontz' claims, and the district court's judgments, affirming that order of the Director of Administrative Services, are incorrect as a matter of

law. Therefore, we reverse the judgments of the district court and remand this matter to the district court with direction to set aside the order of the Director of Administrative Services, thereby restoring this matter to the Director of Administrative Services for further proceedings provided by law.

In view of our disposition on the jurisdictional issue and because the Director of Administrative Services has not determined whether the Vontz claims are meritorious, we need not, and do not, consider Vontz' contention that the district court should have granted an evidential hearing on the merits of the contractual claims.

REVERSED AND REMANDED WITH DIRECTION.