HIWAY 20 TERMINAL, INC., A NEBRASKA CORPORATION, APPELLEE, v. TRI-COUNTY AGRI-SUPPLY, INC., A NEBRASKA CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, AND ABILD, INC., DOING BUSINESS AS ATLANTIC STEEL ERECTORS, AN IOWA CORPORATION, THIRD-PARTY DEFENDANT, APPELLANTS.
HIWAY 20 TERMINAL, INC., A NEBRASKA CORPORATION, APPELLEE, v. ABILD, INC., DOING BUSINESS AS ATLANTIC STEEL ERECTORS, AN IOWA CORPORATION, APPELLANT.

443 N.W.2d 872

Filed July 7, 1989.    No. 87-681.

Michael T. Brogan, of Brogan & Stafford, P.C., for appellant Tri-County Agri-Supply.

William J. Ross, of Ross, Schroeder & Fritzler, for appellant Abild.

Peter T. Hoffman and Kim M. Robak, of Rembolt Ludtke Parker & Berger, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Appellant Tri-County Agri-Supply, Inc. (Tri-County), as general contractor, entered into a written contract to construct a grain storage building, known as the north building, for the appellee, Hiway 20 Terminal, Inc. (Hiway 20). The appellant Tri-County subcontracted with the appellant Abild, Inc. (Abild), generally providing that Abild would provide the labor for erection of the north building. Materials for the north building were manufactured and furnished by Chief Industries, Inc., not a party to this action.

The north building was completed in November 1982 and filled with approximately 600,000 bushels of grain, shortly thereafter. In January 1983, representatives of the appellee Hiway 20 noticed that the north building was beginning to bulge and sag. During 1983, the building was emptied of grain, and it was discovered that certain turnbuckles were not properly installed, thereby causing damage to the building. The fact of improper installation is not disputed on appeal.

Although various theories of recovery were alleged by Hiway 20, this action was tried and submitted to the jury as a negligence action against the appellant Abild as subcontractor and the appellant Tri-County as general contractor. The appellee alleged that Abild was negligent in failing to adequately assemble the tie rods supporting the walls and roof of the north building. The appellant Tri-County was charged with negligence in failing to inspect the work of the subcontractor Abild.

Both appellants defended, stating that they used due care at all times and were not negligent. Tri-County filed a cross-claim against Abild for indemnity, in the event a judgment was entered against the contractor, on the grounds that Abild's

negligence was active and primary while Tri-County's was merely passive, and, further, by virtue of a written indemnity clause in favor of Tri-County contained within the subcontract agreement.

A jury returned a verdict against both appellants in the amount of $325,653.10. Judgments were entered on the verdicts, and the district court, as a matter of law, entered judgment in favor of Tri-County on its indemnity cross-claim.

Both Abild and Tri-County appeal, alleging various errors. Tri-County contends the district court erred in permitting the appellee's expert witness to testify on the diminution in value of the grain storage facility when the witness was not a licensed appraiser, contrary to Neb. Rev. Stat. § 81-8,286(1) (Reissue 1987). Abild alleges that the district court erred in barring the defendants from cross-examining Chief Industries' witness and in entering judgment for Tri-County on its cross-petition against Abild for $325,653.10. We will address these contentions in order.

Hiway 20 requested damages of $154,293.10 in actual damages, $171,360 in diminution in value, and $116,865.37 in lost profits. The jury awarded $325,653.10—the amount of actual damages plus diminution in value. In determining the diminution in value, Hiway 20 called Harry Ahrenholtz to give his opinion on the amount of diminution in value. Tri-County objected to this testimony at trial on the basis of lack of qualifications, as Ahrenholtz was not a licensed appraiser. The district court overruled the objection and admitted the testimony. It is with this ruling that the appellant Tri-County finds error, basing the objection on § 81-8,286. This assignment of error is without merit.

Section 81-8,286 is a regulatory, not an evidentiary, statute. Section 81-8,286(1) provides, in relevant part, "No person shall testify as an appraiser before any tribunal, court, judge, referee, or judicial committee without being licensed . . . ." This statute is contained under the headings "Real Estate Appraisers," "State Administrative Departments," and "Independent Boards and Commissions." The real estate appraisers act was enacted to regulate the occupation of real estate appraisers, not to limit the admissibility of evidence in

court. Instead, to determine the admissibility of Ahrenholtz's opinion, the statutory scheme governing expert witnesses must be examined.

Neb. Rev. Stat. § 27-601 (Reissue 1985) provides that "[e]very person is competent to be a witness except as otherwise provided in these rules." "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Neb. Rev. Stat. § 27-702 (Reissue 1985). It is this statutory scheme which governs the admissibility of Ahrenholtz' opinion, not the statute governing the licensing of real estate appraisers. We were presented with a similar question in *Lincoln Tel. & Tel. Co. v. County Board of Equalization*, 209 Neb. 465, 308 N.W.2d 515 (1981).

In *Lincoln Tel. & Tel. Co., supra*, we were concerned with the testimony of a witness conducting a critique of the appraisal method of a public utility property. We allowed testimony by one other than a licensed appraiser, stating, "The record establishes that the valuation of public utilities, including telephone companies, calls for specialized knowledge that a person holding a real estate appraiser's license would not necessarily have." *Id*. at 474, 308 N.W.2d at 521. Likewise, as found by the trial judge in his order overruling posttrial motions, "In the court's opinion, very few licensed real estate appraisers would be really qualified to testify as to the value of grain handling facilities." We agree, and hold that the testimony of the appellee's expert witness was properly admitted by the district court.

Next, Abild argues that the district court erred in barring the cross-examination of Chief Industries' witness to establish possible bias and personal interest in the lawsuit. The purpose of introducing this evidence was to inquire into the fact that Chief Industries emptied the grain bin and did not demand immediate payment from Hiway 20. Any inquiry into this area was properly refused.

The collateral source rule is well established in the law of damages and long recognized in this jurisdiction. *Tetherow v.*

*Wolfe,* 223 Neb. 631, 392 N.W.2d 374 (1986); *Huenink v. Collins,* 181 Neb. 195, 147 N.W.2d 508 (1966). This rule provides that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. The theory underlying the adoption of this rule by a majority of jurisdictions is to prevent a tort-feasor from escaping liability because of the act of a third party, even if a possibility exists that the plaintiff may be compensated twice.

The evidence that the appellants sought to introduce in this action concerned the cost incurred by the appellee in emptying the grain storage facility when the defect in the building was discovered. Chief Industries is not a party to this action. Chief Industries was merely an independent third party that manufactured the parts used in the construction of the north building. The actual construction was done by Abild. When the building began to bulge and sag, Hiway 20 contacted Chief Industries and requested an opinion as to the cause of the problem. In order to fully examine the building, Chief Industries had to remove the grain from the building. While Hiway 20 and Chief Industries agreed that the appellee was not required to compensate Chief Industries for the removal of grain at that time, Hiway 20 did suffer a loss, as a cost was incurred in emptying the grain storage building. The cost of services supplied by Chief Industries in emptying the building constitutes a compensable damage to the appellee.

The evidence that Chief Industries provided services to Hiway 20 without immediately demanding compensation is inadmissible to establish a decrease in the appellee's damages. The motion in limine requesting that this information be excluded from the evidence was properly sustained under application of the collateral source rule. This assignment of error is therefore without merit.

Finally, we must consider Abild's claim that the indemnification clause contained in the subcontract agreement is void and unenforceable.

Initially, Abild argues that the indemnification clause is invalid due to application of Neb. Rev. Stat. § 25-21,187 (Reissue 1985). That section provides, in relevant part:

> In the event that a public or private contract or agreement, for the . . . work dealing with construction . . . contains a covenant, promise, agreement, or combination thereof, to indemnify or hold harmless another person from that person's own negligence, then such covenant, promise, agreement, or combination thereof is void as against public policy and wholly unenforceable.

The indemnification clause in the subcontract agreement at issue in this case provides as follows:

> The Subcontractor agrees to indemnify and save harmless the Contractor from any and all loss or damage (including, without limiting the generality of the foregoing, legal fees, and disbursements paid or incurred by the Contractor to enforce the provisions of this paragraph), occasioned wholly or in part by any negligent act or omission of the Subcontractor or that of anyone directly or indirectly employed by them or performing the work of this Subcontractor under the direction of the Subcontractor or anyone for whose acts any of them may be liable in carrying out the provisions of the general contract and of this Subcontract regardless of whether or not it is caused in part by a party indemnified hereunder.

As conceded by the appellant Tri-County, the final clause in this agreement, stating that the subcontractor must indemnify the general contractor even if the harm is caused by the negligence of the general contractor, is clearly invalid by application of § 25-21,187. Abild, however, contends that the inclusion of this invalid clause in the agreement renders the whole indemnification provision void and unenforceable. This contention is in error. The portion regarding Abild's potential liability for the negligence of Tri-County can be stricken from the remainder of the indemnification clause, and the language that remains may nonetheless be interpreted to impose liability on Abild. However, even if the clause were completely invalidated, because of the common-law right of indemnification which exists in this state, Abild could be required to indemnify Tri-County for the damage caused by Abild's negligence, even absent an agreement to indemnify.

This court has addressed the issue of indemnification in

situations in which an agreement to indemnify is present and in cases where there is no agreement. As stated by this court in *Duffy Brothers Constr. Co. v. Pistone Builders, Inc.*, 207 Neb. 360, 363, 299 N.W.2d 170, 172 (1980),

> "The obligation to indemnify may grow out of an implied contractual relation or out of a liability imposed by law. Thus, where one is compelled to pay money which in justice another ought to pay, or has agreed to pay, the former may recover from the latter the sums so paid, unless the one making the payment is barred by the wrongful nature of his conduct."

In *Tober v. Hampton*, 178 Neb. 858, 872, 136 N.W.2d 194, 203 (1965), a case involving no contractual right to indemnification, we followed Louisiana law, stating, " '[I]ndemnity is restricted to cases where actual fault is attributed to one party and other party is only technically or constructively at fault, and indemnity is never applicable where both parties are actually in the wrong.' " In *Tober*, we did not define precisely what is meant by the terms "technically or constructively" at fault. Similarly, in *Duffy Brothers Constr. Co., supra* at 363-64, 299 N.W.2d at 172, a case involving workers' compensation benefits and no written provision for indemnity, we stated that

> "[t]he right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."

This court then defined primary versus secondary liability by distinguishing not between degrees of negligence, but between the "difference in the *character* or *kind* of the wrongs which cause the injury." *Duffy, supra* at 364, 299 N.W.2d at 172.

In a case involving a contract right to indemnity, *Farmers Elevator Mut. Ins. Co. v. American Mut. Lia. Ins. Co.*, 185 Neb. 4, 173 N.W.2d 378 (1969), we denied indemnity to an "actively" negligent joint tort-feasor, as opposed to a

"technical, constructive, or passive" joint tort-feasor, barring the claimant from indemnification for his own active negligence. In *Farmers Elevator*, we left open the question of whether a "technical, constructive, or passive" joint tort-feasor is entitled to indemnity from an active and primary joint tort-feasor, as a determination of that issue was unnecessary for disposition of the case. A determination of this issue is, however, required in the resolution of this case.

Although this court has employed different phrasing in cases involving claims for indemnification, the rule of law applicable remains constant. Whether the conduct of the party seeking indemnification, either through an existing contract right or otherwise, amounts to "secondary," "technical," "constructive," "vicarious," or "passive" negligence is merely a question of semantics, and all of the above terms simply indicate that *any* conduct other than that which is characterized as direct and active negligence will not bar the claimant from indemnification, if otherwise entitled. More clearly stated, one whose negligence has consisted of mere passive neglect may have indemnity from an active wrongdoer. If one tort-feasor, by active conduct, has created a danger to the plaintiff, and the other has merely failed to discover or to remedy it, the passive tort-feasor may be entitled to indemnification. Prosser and Keeton on the Law of Torts, *Indemnity* § 51 (5th ed. 1984).

Therefore, in the present case, the district court was correct in granting indemnification to Tri-County. Although it was passively negligent, if we did not allow Tri-County indemnity, a general contractor could never recover from the subcontractor for damages caused by the active negligence of the subcontractor merely because the general contractor failed to adequately inspect the work of the subcontractor. We do not feel this result is mandated. The Abild workers were actively derelict in their duties. The only negligence of Tri-County was failure to discover an installation defect which was directly caused by the actions of Abild. Indemnity will be allowed where the indemnitee has incurred liability to a third person because of negligent reliance upon the care that the indemnitor should have exercised. Because the negligence of Abild was active and the negligence of Tri-County merely passive, Tri-County is

entitled to indemnity for the loss suffered as a result of the negligence of Abild.

The judgments of the district court are therefore affirmed.

AFFIRMED.

CAPORALE, J., concurring.

Because this court is ordinarily obliged to resolve cases on the theory on which they were tried, *First West Side Bank v. Hiddleston*, 225 Neb. 563, 407 N.W.2d 170 (1987), it was appropriate to treat this appeal as one in negligence.

However, the character of an action is determined by the nature of the grievance. *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984). The grievance here is that the subcontractor, Abild, Inc., failed to install the turnbuckles in a workmanlike manner, in violation of the terms of its agreement with the contractor, Tri-County Agri-Supply, Inc. Thus, the case is in reality one for breach of contract, not one for the negligent infliction of damages. *L.J. Vontz Constr. Co. v. State*, 230 Neb. 377, 432 N.W.2d 7 (1988).

Thus, while I agree with the result in this case, I write separately to lament the apparent developing proclivity to forsake all civil jurisprudence save the law of negligence. Had this case been tried as one in contract, as it should have been, not only would our analysis have been less complicated, but the matter would have been far easier to present to the jury.

FAHRNBRUCH, J., joins in this concurrence.