# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3237

_____

|  |  |  |
|---|---|---|
| Rose Marie Day, Personal Representative of the Estate of Jason David Day, Deceased; Rose Marie Day, Personal Representative of the Estate of David Geoffrey Day, Deceased, Assignee of, | * * * * * * * * | |
| Plaintiffs/Appellees, | * * | |
| Stewart Construction, Inc., A Nebraska Corporation; Doug Stewart, doing business as Stewart's Cat Service and Stewart Construction, Inc., | * * * * * | Appeal from the United States District Court for the District of Nebraska. |
| Plaintiffs, | * * | of Nebraska. |
| v. | * * | |
| Gerald Toman; Indianola Insurance Company, | * * * | |
| Defendants/Appellants. | * | |

_____

Submitted: August 21, 2001

Filed: September 17, 2001

_____

Before ROSS, FAGG, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant, Gerald Toman, appeals the district court's[1] judgment overruling his motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. For the reasons set forth below, we affirm.

## I. BACKGROUND

### A. Alignment of the Parties

Appellee, Rose Marie Day, brought this case against Toman pursuant to an assignment by Doug Stewart of his claim against Toman and Indianola Insurance Agency for negligently failing to procure commercial liability insurance for Stewart's business, Stewart Construction, Inc.

Day's husband and son were killed while working for Stewart Construction at a water injection plant then owned by Convest Energy Corporation, and Day is the personal representative of their estates. Several lawsuits ensued following the deaths: Day v. Convest Energy Corporation for wrongful death; Day v. Doug Stewart and Stewart Construction, Inc. for workers' compensation; Continental Western v. Rose Marie Day, Convest Energy Corporation, Doug Stewart and Stewart Construction, Inc. for a declaratory judgment as to the terms of the insurance policy at issue; Convest Energy Corporation v. Doug Stewart and Stewart Construction, Inc., as third- party defendants, seeking indemnification under a Master Service Contract; and Doug

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

<u>Stewart and Stewart Construction, Inc. v. Gerald Toman and Indianola Insurance Co.</u> under a cross-claim for failure to procure insurance.

A settlement agreement was entered into by Day, Convest, Doug Stewart, Stewart Construction, Inc., and Continental Western Insurance Corporation, whereby Day received a sum of money in excess of $300,000 and an assignment from Convest of the right to pursue an additional sum of $300,000 from Stewart pursuant to the Master Contract indemnification clause. In turn, Stewart assigned Day his claim against Toman and Indianola Insurance Agency for negligently failing to procure commercial liability insurance.

All other claims were dismissed in this settlement agreement except, as indicated, Convest's claim against Stewart for indemnification under the Master Service Contract and Stewart's claim against Toman for negligence, both of which were assigned to Day in exchange for a release of all remaining claims and a covenant not to execute.

## B.    Background

Day's husband and son were killed on February 28, 1996. For many years Stewart had operated his business as Stewart's Cat Service, a proprietorship. On September 11, 1995, Stewart incorporated in Nebraska under the name of Stewart Construction, Inc., and proceeded to meet with his insurance agent, Toman, on September 27 regarding commercial insurance coverage. Toman was an insurance agent acting on behalf of Indianola Insurance Agency and Continental Western Insurance Company. As a result of this meeting, Stewart procured workers' compensation insurance for his company. At issue is whether Stewart did in fact request certain coverage and whether he advised Toman of his new corporate status.

One month before incorporation, in August 1995, Stewart and Convest entered into a "Master Service Contract" (Master Contract) that specifically contained a provision requiring Stewart to indemnify Convest in the amount of $300,000. The language of the indemnification clause states that Stewart will indemnify Convest "against any and all losses, claims, demands, liabilities or causes of action of every kind and character, in favor of any person or party, for which injury, illness or death arises out of or is incident to the work performed under [the] Contract." As part of this Master Contract, Stewart agreed to indemnify Convest even if such injury, illness or death was caused in whole or part by a pre-existing defect, Convest's negligence or strict liability, or other legal fault of Convest.

Following the deaths of Day's husband and son, Stewart notified Toman of the accident. Continental Western denied coverage for claims relating to the deaths because, among other reasons, the policy did not list Stewart's new corporate name as the named insured on the policy.

The district court specifically reserved resolution of the issue concerning Stewart's liability to Convest under the Master Contract until after the trial regarding Toman's alleged negligence had concluded. The issue before the district court at trial, then, was Day's claim, as Stewart's assignee, for Toman's negligent failure to procure insurance. The jury entered judgment in favor of Day in the amount of $320,072.

## II.    DISCUSSION

### A.    Statutory Prohibition

Toman argues that under Neb. Rev. Stat. § 25-21,187 (Reissue 1995), the Master Contract between Convest and Stewart is wholly void as against public policy. The statute states in relevant part:

In the event that a public or private contract or agreement for the construction, alteration, repair, or maintenance of a building, structure . . . or other work dealing with construction . . . contains a covenant, promise, agreement, or combination thereof to indemnify or hold harmless another person from such person's own negligence, then such covenant, promise, agreement, or combination thereof shall be void as against public policy and wholly unenforceable.

Toman's argument fails because even if a party holds the other harmless for the other's own negligence, thereby falling under the section 25-21,187 prohibition, the entire indemnification provision is not void and unenforceable. Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc., 443 N.W.2d 872, 875-76 (Neb. 1989). Under Nebraska law, only the portion prohibited by section 25-21,187 is stricken from the indemnification clause and the language remaining may be interpreted to impose liability on the indemnitor. Id. As applied to the facts before us, Stewart could, depending upon extant circumstances, remain liable to Convest for indemnification of all claims that do not arise as a result of Convest's own negligence.

However, this statutory issue is not properly before us. The district court held that Toman waived this defense. We agree. Toman did not raise the section 25-21,187 defense in his pre-verdict, Rule 50(a) motion for judgment as a matter of law and may not now raise it on appeal after having raised it for the first time in his post-verdict, Rule 50(b) motion. See Browning v. President Riverboat Casino-Missouri, Inc., 139 F. 3d 631, 636 (8th Cir. 1998) (stating that in making a renewed motion for judgment as a matter of law, a movant generally must assert only those grounds previously raised in the pre-verdict motion for judgment). Accordingly, Toman waived this matter.

**B.      Commercial Liability Policy Coverage**

Toman further argues that even if the Master Contract is enforceable as between Stewart and Convest, the commercial policy provided by Continental Western excludes coverage for this type of indemnification. The interpretation of an insurance policy and the construction of the terms of an insurance contract are questions of law subject to de novo review on appeal. State Farm Mut. Auto. Ins. Co. v. Cheeper's Rent-A-Car, Inc., 614 N.W.2d 302, 307 (Neb. 2000); Fraternal Order of Police, Lodge No. 2 v. County of Douglas, 612 N.W.2d 483, 486 (Neb. 2000).

The commercial policy language excludes contractual liability assumed by the insured. However, liability for damages assumed in an "insured contract" is specifically covered and is an exception to such exclusion. An "insured contract" is defined under the policy as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." In other words, the commercial liability policy excludes most indemnification agreements unless they fall within the definition of an "insured contract." The essential question is whether the indemnification clause found in the Master Contract qualifies as an "insured contract".

We agree with the district court's judgment that the Master Contract is covered by Continental Western's commercial liability coverage. The Master Contract falls within the "insured contract" exception from the general policy exclusion.

"In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous." Fraternal Order of Police, 612 N.W.2d at 486 (citations omitted).

A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.

Id. at 487 (citations omitted). The court must give the terms of the contract their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. Id.

Following the analysis of the district court, we find no ambiguity in the "insured contract" exception to the commercial general liability policy exclusion. If the properly named insured had been included on the policy at issue, there would have been coverage if the insureds were determined to be obligated to indemnify Convest under the Master Contract due to the deaths of Day's husband and son. Day is a "third person" to the Master Contract, and the Master Contract falls under the "insured contract" exception to the policy exclusion.

## C.    Release

Toman also argues on appeal that he was released from liability. The Nebraska Supreme Court states that a valid release of a principal releases the agent from liability. Ericksen v. Pearson, 319 N.W.2d 76, 82 (Neb. 1982). In so holding, the court specifically refers to and relies upon a factually similar California case stating that a release of all claims against the insurer extinguishes the insured's sole primary right and nullifies the reservation of the right to proceed against an agent in a release. Id. at 83.

Accordingly, it is certainly arguable that Toman may have been effectively released when Day entered into the settlement agreement with Stewart and Continental Western, notwithstanding the fact that Stewart's claim against Toman and Indianola

Insurance Agency was specifically reserved by the settling parties. However, we do not need to reach this very complicated issue because Toman did not assert this affirmative defense at trial and, therefore, may not now raise it on appeal. "Release is an affirmative defense which will be considered by the court only if properly pleaded." Watts v. Butte Sch. Dist. No. 5, 939 F. Supp. 1418, 1424 (D. Neb. 1996) (citing National Compressor Corp. v. Carrow, 417 F.2d 97, 102 (8th Cir. 1969); Fed. R. Civ. P. 8(c)).

### D.    Failure of Proof

Toman next argues that Day failed to meet the burden of proof on the negligence claim against him. On this issue, we affirm the jury verdict. "Appellate review of a jury verdict is extremely deferential. . . . Judgment as a matter of law is proper only when the evidence is such that, without weighing the credibility of the witnesses, there is a complete absence of probative facts to support the verdict." Browning, 139 F.3d at 634 (citation omitted). We presume the jury appropriately weighed the evidence on both sides. The jury could have reasonably found Toman negligent.

Toman also argues that the jury was improperly instructed regarding Toman's duty to Stewart, and that it was prejudicial to redact the settlement amount from the copy of the agreement provided to the jury. Again, we follow the reasoning of the district court. The court incorporated the appropriate standard in Jury Instruction No. 15. Instruction No. 15 expressly informs the jury of Nebraska law as set forth in Polski v. Powers, 377 N.W.2d 106, 108 (Neb. 1985). An agent has no duty to anticipate what coverage an individual or company should have. Id. Further, the amount of the settlement is irrelevant to the issue of Toman's alleged negligent procurement of commercial liability insurance. The settlement is only relevant to clarify for the jury why Day was a plaintiff in this case.

### E. Objective Testimony

Toman argues that the district court erred by allowing Lawrence Lessert to testify as a rebuttal witness. Lessert opined as to the standard of care in the insurance industry and the standards to which agents should be held. Toman did not object to Lessert's testimony. Toman's failure to object to Lessert's testimony "'at the first available opportunity served to waive any ground of complaint against its admission, absent plain error.'" Powell v. Burns, 763 F.2d 337, 338 (8th Cir. 1985) (quoting United States v. Vesich, 724 F.2d 451, 462 (5th Cir. 1984)). We find no plain error resulting from the admission of this testimony.

### F. Damages

Toman's final argument is that even if he could have been found negligent by the jury, Day failed to establish an essential element of her claim–damages. Toman points out that there has never been an adjudication of or a meeting of the minds between Stewart and Convest on the matter of damages arising under the Master Service Contract. Indeed, Toman asserts, this issue was specifically reserved for determination after the trial.[2]

Again, however, we need not address the validity of this claim. It has not been preserved on appeal.

---

[2]Day argues that an effective assignment coupled with a covenant not to execute hardly vitiates damages to the assignor and in fact acknowledges an obligation to assignor. Although this argument may be relevant in a discussion regarding Day's relationship to Stewart as assignee, it evades the fundamental determination as to whether Stewart is obligated to indemnify Convest at all. The question of damages rests on determining whether Continental Western would have been required to pay out under the commercial liability policy. Day's covenant not to execute against Stewart has no bearing on the issue of damages raised by Toman.

Initially we note that Toman failed to object to the court's instructions on the issue of damages. As a result, we can only review for plain error. A reversal will occur under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected. United States v. McNeil, 184 F.3d 770, 777 (8th Cir. 1999).

Even more fundamentally, the failure of proof of damages was not raised in the pre-verdict, Rule 50(a) motion for judgment as a matter of law. Even if Toman's post-trial 50(b) motion encompasses an argument on failure of proof on damages, which is questionable due to a lack of specificity, his failure to raise it in his 50(a) motion waived the opportunity to raise it after trial. See Browning v. President Riverboat Casino-Missouri, Inc., 139 F. 3d 631, 636 (8th Cir. 1998) (stating that in making a renewed motion for judgment as a matter of law, a movant generally must assert only those grounds previously raised in the pre-verdict motion for judgment).

Accordingly, we have no basis for review of this issue of damages on appeal. Thus, we must affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-